United States District Court
Southern District of Texas
**ENTERED**
April 01, 2026
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CLAUDIA LETICIA HERNANDEZ MEDRANO, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. 4:26-cv-1745 |
| KRISTI NOEM, *et al.*, | § § | |
| Respondents. | § § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Petitioner Claudia Leticia Hernandez-Medrano's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") and Complaint for Preliminary Injunctive Relief (ECF No. 1) as well as the Government's ("Respondents") Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment (ECF No. 8). Petitioner then filed a Reply in Opposition to the Government's motion (ECF No. 9). Based on a careful review of the Petition, briefing, arguments, and relevant law, including recent binding precedent from the Fifth Circuit, the Court **RECOMMENDS** Petitioner's Petition (ECF No. 1) be **DENIED**, Respondents' Motion for Summary Judgment (ECF No. 8) be **GRANTED**, Petitioner's Complaint for

---

[1] This case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 4).

Preliminary Injunctive Relief (ECF No. 1) be **DENIED AS MOOT**, and this case be **DISMISSED WITH PREJUDICE**.

## I.    Background

According to the Petition, Petitioner is a citizen of Mexico who entered the United States without inspection in 2023.  (ECF No. 1 at ¶¶ 1–2).  On or about February 3, 2026, Respondents' agents detained Petitioner.  (*Id.* at ¶ 7).  At the time of the filing of the Petition, Petitioner was in custody at Houston Contract Detention Facility in Houston, Texas.  (*Id.* at ¶ 9).  Petitioner seeks release from detention or a bond hearing under 8 U.S.C. § 1226(a).  (*See id.* at ¶¶ 66–77).  Her Petition also alleges violations of bond regulations (*id.* at ¶¶ 74–77), a violation of the Administrative Procedure Act ("APA") (*id.* at ¶¶ 78–83), and a Fifth Amendment violation (*id.* at ¶¶ 84–89).

## II.    Legal Standard

### a.  Habeas Corpus

A person in custody in violation of the Constitution or laws or treaties of the United States can seek relief by writ of habeas corpus.[2]  *P.B. v. Bergami*, No. 3:25-cv-2978, 2025 WL 3632752, at *2 (N.D. Tex. Dec. 13, 2025) (citing 28 U.S.C. § 2241(c)(3)).  "[A]bsent suspension, the writ of habeas corpus remains

---

[2] In this case, no party disputes the Court's jurisdiction.  Thus, as Petitioner challenges the mandatory detention scheme under 8 U.S.C. § 1225, this Court has habeas jurisdiction over his claim that he is being unlawfully detained in the United States.  *Id.* (citing 8 U.S.C. § 2241(c)(3)).

available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "The Supreme Court has interpreted § 2241 as granting district courts with jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens." *Lopez v. Ladwig*, No. 6:25-cv-1884, 2026 WL 19095, at *3 (W.D. La. Jan. 2, 2026) (citing *Rasul v. Bush*, 542 U.S. 466, 473 (2004)).

b. <u>Motion for Summary Judgment</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure ("Rule") 56. Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021). "An issue is 'genuine' if it is real and substantial, as opposed

3

to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis omitted). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual

4

controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

### III.    Discussion

#### a.    Mandatory Detention

Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225. (*See* ECF No. 8 at 1). Specifically, relying on section 1225(b)(2)(A), Respondents argue Petitioner is "an applicant for admission" because she is an alien "present in the United States who has not been admitted," and is thus subject to mandatory detention. (ECF No. 8 at 3–4 (citing 8 U.S.C. § 1225(a)(1); 8 U.S.C. § 1225(b)(2)(A))). Petitioner does not appear to contest this point. (*See* ECF No. 9). Instead, Petitioner's argument focuses on the fact that Respondents previously released Petitioner to reside and work in the United States while seeking asylum but have previously re-detained her "without any individualized necessity finding." (*Id.* at 3).

To be clear, the Fifth Circuit issued a recent opinion in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

5

*Buenrostro-Mendez* involved petitioners who illegally entered the United States many years ago. *Id.* at \*3 (noting that one petitioner entered the U.S. illegally in 2001 and the other entered illegally in 2009). Similar to the instant case, the petitioners in *Buenrostro-Mendez* argued they were eligible for discretionary release on bond during removal proceedings because they did not "seek [lawful] admission" according to § 1225. *Id.* at \*1 (citing 8 U.S.C. § 1226(a)(2)).

In its decision, the Fifth Circuit explained that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was intended to "reduce [the] incongruity" of illegal aliens "who have entered the United States without inspection gain[ing] equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection." *Id.* at \*1 (quoting H.R. Rep. No. 104-469, pt. 1, at 225 (1996)). For example, "[a]liens who arrived at a port of entry were subject to mandatory detention until the conclusion of the exclusion process and could not request release on bond." *Id.* However, "aliens who evaded inspection and were apprehended months or years later could seek release on bond pending deportation proceedings." *Id.*

After the passage of IIRIRA, under § 1225(a), any alien who enters the United States illegally, who has not been previously lawfully admitted, is "deemed for purposes of this chapter an applicant for admission." 8 U.S.C.

6

§ 1225(a)(1).  Under that same statute, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  *Id.* § 1225(b)(2)(A).

Section 1226(a), however, provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  *Id.* § 1226(a). The Fifth Circuit observed, "[u]nlike § 1225(b), § 1226(a)(2)(A) permits, but does not require, the Attorney General to release detained aliens on 'bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General.'"  *Buenrostro-Mendez*, 2026 WL 323330, at *2 (quoting 8 U.S.C. § 1226(a)(2)(A)).  As to § 1226(a), the Fifth Circuit concluded, it "undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error."  *Id.* at *7.

As part of its decision, the Fifth Circuit rejected the argument that § 1225 can only apply to aliens who are actively seeking admission, as opposed to illegal aliens present in the United States who never sought lawful admission, as stretching the Supreme Court's description of the statutory scheme too far.  *Id.* at *7–8 ("In claiming that the Supreme Court's

7

pronouncement that § 1225(b) applies to aliens who are seeking admission supports their interpretation, the petitioners inexplicably assume that the Supreme Court understood 'seeking admission' in the same way that petitioners do.  It demonstrably did not.").

With the *Buenrostro-Mendez* decision in mind, the Court finds that a person who entered the United States illegally and is clearly and beyond a doubt not entitled to admission, is subject to mandatory detention under § 1225(b)(2)(A).[3]  Further, the Court finds that Petitioner is present without having been admitted and is therefore treated an as applicant for admission under 8 U.S.C. § 1225(a)(1).  Finally, because an immigration officer has not determined Petitioner clearly and beyond a doubt is entitled to be admitted, the Court finds mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies. As such, the Court recommends Petitioner's petition for a writ of *habeas corpus* be denied.  *See Zoila Perez Villada v. Pamela Jo Bondi, et al.*, No. 4:26-cv-1856, 2026 WL 820866, at *1 (S.D. Tex. Mar. 25, 2026) ("Petitioner's arguments regarding sections 1225 and 1226 and their implementing regulations are foreclosed by the Fifth Circuit's recent decision in *Buenrostro-Mendez . . . .*").

---

[3] In her Petition, Petitioner relies on a nonbinding decision from the Central District of California in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).  (ECF No. 1 at 25–26).  However, as discussed above, the Court is bound by the Fifth Circuit's decision in *Buenrostro-Mendez*.  As such, Petitioner's argument as to *Maldonado Bautista* is unpersuasive.

b. The APA

Petitioner alleges a claim under the APA.  However, her APA claim fails because an "adequate remedy in a court" is available via habeas corpus.  *See Reynaldo Muniz Mosqueda v. Todd M Lyons, et al.*, No. 4:26-cv-1841, 2026 WL 821173, at *1 (S.D. Tex. Mar. 25, 2026) (citing 5 U.S.C. § 704); *Garibay-Robledo v. Noem*, No. 1:25-cv-177, 2026 WL 81679, at *10 (N.D. Tex. Jan. 9, 2026) ("Section 704 of the APA states, in no uncertain terms, that '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.'  Because [Petitioner] requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA.").  Further, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas." *P. B.*, 2025 WL 3632752, at *9 (quoting *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025)).  As such, the APA does not provide for judicial review of Petitioner's claim.

c. Fifth Amendment

Petitioner also alleges a Fifth Amendment violation.  Petitioner bases this allegation upon her immigration detention.  (*See* ECF No. 1 at ¶¶ 84–89). Further, in her Reply, Petitioner argues that an individualized custody determination is required.  (*See* ECF No. 9 at 4).

9

The "Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Maceda Jimenez v. Thompson*, No. 4:25-cv-5026, 2025 WL 3265493, at *1 (S.D. Tex. Nov. 24, 2025) (citing *Demore v Kim*, 538 U.S. 510, 523 (2003)). With respect to substantive due process, it protects only those "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Department of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). In that regard, the Supreme Court has "repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). "Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Id.* (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). As such, "'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Diaz Patino v. Villegas*, No. 1:25-cv-276, 2026 WL 673166, at *5 (N.D. Tex. Mar. 9, 2026) (quoting *Matthews v. Diaz*, 426 U.S. 67, 80 (1976)). As for immigration detention, the Supreme Court's "longstanding view" is that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal

proceedings." *Demore*, 538 U.S. at 526. Thus, Petitioner's substantive due process claim fails.

As for procedural due process, as an "applicant for admission," Petitioner has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding her application, for the power to admit or exclude aliens is a sovereign prerogative."). Holding otherwise would "undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter" unlawfully. *Thuraissigiam*, 591 U.S. at 140 (quoting *Plasencia*, 459 U.S. at 32). As Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) for the limited period of her removal proceedings, Petitioner has received the process Congress affords. *Diaz Patino*, 2026 WL 673166 at *5. Thus, Petitioner is not entitled to a bond hearing as a matter of procedural due process. *Id.* (explaining that, regardless of whether a Fifth Amendment challenge is based on substantive or procedural due process, the government is not required to give an applicant for admission a bond hearing).

Petitioner argues that because "DHS initially proceeded under discretionary custody, released Petitioner, and later re-detained her while

11

invoking a categorical § 1225(b)(2) theory," an individualized custody hearing is required.  (ECF No. 9 at 4).  However, Petitioner provides no authority that stands for this proposition and ultimately does not appear to contest that detention during removal proceedings is constitutionally permissible.[4]  *See Paez v. Wal-Mart Stores Tex., LLC.*, No. 20-cv-321, 2022 WL 3216343, at *2 (W.D. Tex. Aug. 9, 2022) ("In our adversarial system, it is a party's obligation— not the courts'—to develop arguments. . . . When a party submits arguments that are bereft of legal authority and citations to the record, it has failed to develop those arguments."); *see also Rodriguez-Hidalgo v Noem*, 4:25-cv-05730 (S.D. Tex. Jan 9, 2026) (quoting *Duarte v Mayorkas*, 27 F4th 1044, 1060 n.13 (5th Cir 2022)) ("To the extent that [bond] regulations contradict the plain text of § 1225(b)(2)(A), the statute governs because '"a valid statute always prevails over a conflicting regulation.'"); *Diaz Patino*, No. 1:25-cv-276, 2026 WL 673166, at *5 (N.D. Tex. Mar. 9, 2026) ("Here, [Petitioner] was released into the United States pending removal just a few years ago.  Her release was not an admission

---

[4] To the extent Petitioner makes any *Zadvydas v. Davis* arguments that "[f]reedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Due Process] Clause protects," the Supreme Court "explicitly distinguished *post*-removal-period detention (which has no obvious termination point, thus requiring a constitutional constraint on unbounded detention) from 'detention pending a determination of removability.'" *Maceda Jimenez*, 2025 WL 3265493, at *1 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690, 697 (2001) (emphasis in original)). "*Zadvydas* thus doesn't suggest that detention during removal proceedings *itself* violates due process." *Id.* (emphasis in original). "Instead, as the Supreme Court in *Demore* later stated, '[d]etention during removal proceedings is a constitutionally permissible part of that process.'" *Id.* (quoting *Demore*, 538 U.S. at 531).

into the country, and she remains in the United States without admission. Therefore, she is entitled to nothing more than the 'limited form of process' that is offered by the respondents under their current deportation policy.").

As such, the Court recommends Respondents' Motion for Summary Judgment as to Petitioner's Fifth Amendment claim be granted.

## IV.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Petitioner's Petition (ECF No. 1) be **DENIED**, Respondents' Motion for Summary Judgment (ECF No. 8) be **GRANTED**, Petitioner's Complaint for Preliminary Injunctive Relief (ECF No. 1) be **DENIED AS MOOT**, and this case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on April 1, 2026.

Richard W. Bennett
United States Magistrate Judge

13